Dear Mr. Black:
You requested an opinion from this office regarding the current Washington Parish Sheriff. More specifically, you asked the following questions:
 (1) Will the new Sheriff be legally obligated to assume the indebtedness created to operate the Sheriff's office for the final four months of Sheriff Rayburn's term?
 (2) (a) If the answer to question 1 is no, will Sheriff Rayburn be personally obligated to repay this loan to the fiscal agent?
 (b) If the answer to question 1 is no, what authority does the current Sheriff have to dispose of assets to satisfy any indebtedness?
 (3) If the answer to question 1 is yes and assuming that the new Sheriff would not renew the fiscal agency contract and would not otherwise assume the indebtedness, what recourse does the fiscal agent have in collecting the indebtedness of the new Sheriff?
This office has been advised that the facts have changed since you requested the opinion. You have indicated that Sheriff Rayburn has paid off the indebtedness to the fiscal agent stemming from Sheriff Lyons' term of office. However, the Sheriff expended most of his current fiscal year revenues to make the payments, and is currently without operating funds sufficient to continue operating his office until the end of the fiscal year, June 30, 1992. After that time, the newly elected sheriff will assume office. The new sheriff-elect, Duane Blair, is unwilling to assume any indebtedness incurred during any prior administration.
In answer to your first question, I refer you to Asadie v. Hebert, 15 So.2d 392 (Orl. Ct. App. 1943), and two previously released Attorney General Opinions, numbers 91-259 and 80-828 based on Asadie. In Asadie, the court found that the successor sheriff was not obligated by statute to pay the debts of his predecessor unless he received funds due his predecessor or received a balance in the Salary Fund from his predecessor. The Attorney General Opinions state the same.
However, this case law was in effect before Acts 1976, No. 689, Section 1 was enacted which provided for the creation of special districts known as law enforcement districts. LSA R.S. 33:9008
provides that the purpose of Title 33:9001 et. seq. is "to create special district for the financing of the sheriff's office." LSA R.S. 33:9010 provides that borrowing under the terms and conditions of LSA R.S. 33:1423(D) "shall constitute the incurrence of a special obligation debt by and of the sheriff and by and of the law enforcement district to which the sheriff's general fund is pledged."
As a special district, the law enforcement district is endowed with all of the powers of all other districts, i.e., the power to borrow money as follows pursuant to LSA R.S. 39:742.2(A):
 "Any political subdivision of the state of Louisiana may anticipate the revenues to be realized from special ad valorem taxes voted pursuant to provisions of the constitution and statutes of the state of Louisiana by borrowing money to be used only for the purpose for which such a tax was voted; however, a political subdivision may not anticipate such revenues for a period of more than ten years or the remaining number of years for which the tax is authorized to be levied, whichever is less.
 Such a borrowing shall be evidenced by certificates of indebtedness of the political subdivision, said certificates of indebtedness to be payable solely from and secured by an irrevocable pledge and dedication of the revenues of such tax."
Thus, the law enforcement district has the power to borrow for up to ten years, secured by special ad valorem taxes, subject to State Bond Commission approval. This borrowing would be legally secured by the bank's being granted a lien against the future ad valorem taxes.
In answer to question (2)(a) in which you ask if Sheriff Rayburn will be personally obligated to repay any new loans made to finance current operations between now and the end of his term, which is a period of approximately four months, I refer you to Attorney General Opinion number 91-11 which discusses the matter of a sheriff's personal liability for the debts of his office. This opinion, based on several previous ones, concludes that a sheriff has no personal liability if the expenditures were made within his statutory authority, which is provided in LSA R.S.33:1421, et. seq.
However, the sheriff does assume personal liability for any notes he signs or endorses in his personal capacity, rather than as agent for the Sheriff in his official capacity. Thus, when signing any documents using his personal name, the sheriff should always indicate that he is signing as agent for the sheriff.
In answer to question (2)(b), wherein you asked by what authority may a sheriff dispose of assets to satisfy any indebtedness, I refer you to LSA R.S. 33:1437 and the notes of decisions following, which state that police juries may provide the sheriff with necessary equipment for which the sheriff must account to the police jury at the expiration of his term of office, or the sheriff may purchase law enforcement equipment out of surplus sheriffs' salary funds.
The only prohibition on disposal of assets that could be found in the statutes is contained in LSA R.S. 14:139.1 entitled "Political payroll padding by sheriff; sale of assets of sheriff's office prohibited". This statute provides as follows:
 "A. During the six months preceding a gubernatorial election and during the time interval between the gubernatorial election and the first day of July following election, it shall be unlawful for any sheriff to:
* * *
 (3) Transfer title and ownership of the capital assets of his office of a value in excess of ten percent of the total value of said assets as reflected in the current inventory filed in the office of the sheriff on the date of the first primary election under the provisions of Section 513 of Title 24.
 (B) In determining whether any surplus or deficit exists in the office of any sheriff at the expiration of a term of office, the current market value of the capital assets of the office as set for in the inventory filed in accordance with Section 513 of Title 24 shall be included in the total assets the sheriff's office.
 (C) The provisions of this Section shall not apply where the increases or decreases are necessitated by flood, invasion by common enemy, or other public emergency."
Thus, in summary, it appears that a sheriff is prohibited from disposing of greater than ten percent of the capital assets of his office during the six months preceding a gubernatorial election and during the time interval between the gubernatorial election and the first day of July following election, unless the disposal is for a public emergency.
Trusting the above answers adequately respond to your request, I remain,
Sincerely,
 RICHARD P. IEYOUB Attorney General
 BY: MARTHA S. HESS Assistant Attorney General
JJ Attachment